**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JEAN-CLAUDE MOUSTACAKIS and IZABELA OLENDSKA-MOUSTACAKIS, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>iTONIC HOLDINGS LTD (f/k/a PHETON HOLDINGS LTD); JIANFEI ZHANG; ZHIXIN LI; PENGFEI ZHANG; CATHAY SECURITIES, INC.; DOMINARI SECURITIES LLC; and MARCUM ASIA CPAS LLP,<br><br>Defendants. | Case No. 26-cv-6484 (AS) |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF**
**JEAN-CLAUDE MOUSTACAKIS AND IZABELA OLENDSKA-MOUSTACAKIS**
**FOR APPOINTMENT OF LEAD PLAINTIFFS AND APPROVAL OF LEAD COUNSEL**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .......... iii

PRELIMINARY STATEMENT .......... 1

FACTUAL BACKGROUND .......... 2

ARGUMENT .......... 4

I. MOVANTS SHOULD BE APPOINTED LEAD PLAINTIFFS .......... 4

A. Movants Filed a Timely Motion .......... 5

B. Movants Have the Largest Financial Interest .......... 5

C. Movants Satisfy the Requirements of Rule 23 .......... 6

II. MOVANTS' SELECTION OF LEAD COUNSEL SHOULD BE APPROVED .......... 8

CONCLUSION .......... 9

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Constance Sczesny Tr. v. KPMG LLP*,
223 F.R.D. 319 (S.D.N.Y. 2004) ....................8

*Kaplan v. Gelfond*,
240 F.R.D. 88 (S.D.N.Y. 2007) ....................5

*Micholle v. Ophthotech Corp.*,
2018 WL 1307285 (S.D.N.Y. Mar. 13, 2018) ....................7

*Peters v. Jinkosolar Holding Co., Ltd.*,
2012 WL 946875 (S.D.N.Y. Mar. 19, 2012) ....................5

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co., Inc.*,
229 F.R.D. 395 (S.D.N.Y. 2004) ....................1, 7–8

*Siegel v. Boston Beer Co.*,
2021 WL 5909133 (S.D.N.Y. Dec. 14, 2021) ....................7

*Taft v. Ackermans*,
2003 WL 402789 (S.D.N.Y. Feb. 20, 2003) ....................7

*Topping v. Deloitte Touche Tohmatsu CPA, Ltd.*,
95 F. Supp. 3d 607 (S.D.N.Y. 2015) ....................8

*In re Tronox, Inc. Sec. Litig.*,
262 F.R.D. 338 (S.D.N.Y. 2009) ....................6, 7

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
589 F. Supp. 2d 388 (S.D.N.Y. 2008) ....................7

**Statutes**

15 U.S.C. § 77k ....................1

15 U.S.C. § 77l(a)(2) ....................1

15 U.S.C. § 77o ....................1

15 U.S.C. § 77z-1(a) ....................1

15 U.S.C. § 78j(b) ....................1

15 U.S.C. § 78t(a) ....................1

15 U.S.C. § 78u-4(a) .......... *passim*

**Other Authorities**

17 C.F.R. § 240.10b-5 .......... 1

Fed. R. Civ. P. 23 .......... *passim*

Lead Plaintiff movants Jean-Claude Moustacakis ("Moustacakis") and Izabela Olendska-Moustacakis ("Olendska-Moustacakis" and, together with Moustacakis, "Movants"), a married couple, on behalf of themselves and all others similarly situated (the "Class"), respectfully submit this memorandum of law in support of their motion to: (1) appoint Movants as Lead Plaintiffs in the above-captioned securities class action; and (2) approve Movants' selection of Morris Kandinov LLP ("Morris Kandinov") as Lead Counsel for the putative Class.[1]

**PRELIMINARY STATEMENT**

Pending before the Court is a securities class action brought on behalf of persons and entities that purchased or otherwise acquired securities of Pheton Holdings Ltd, n/k/a iTonic Holdings Ltd ("PTHL" or the "Company"), between September 5, 2024, and July 29, 2025, inclusive (the "Class Period") (the "Action"). The Action alleges violations of §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), and Securities and Exchange Commission ("SEC") Rule 10b-5, 17 C.F.R. § 240.10b-5, as well as violations of §§ 11, 12(a)(2), and 15 of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. §§ 77k, 77*l*(a)(2), and 77o.

The Private Securities Litigation Reform Act of 1995, as amended, 15 U.S.C. § 78u-4(a)(3)(B) (the "PSLRA"),[2] provides that the court must appoint as lead plaintiff the "most adequate plaintiff." 15 U.S.C. § 78u-4(a)(3)(B)(i); *see, e.g., Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co., Inc.*, 229 F.R.D. 395, 403 (S.D.N.Y. 2004). Movants are

---

[1] Defined terms have the same definitions as in the Class Action Complaint filed in this Action on July 29, 2026 (the "Complaint"). ECF No. 1. Citations in the form "¶ __" refer to the Complaint.

[2] The PSLRA's lead plaintiff provisions appear in materially identical form in the Securities Act, 15 U.S.C. § 77z-1(a)(3)(B). In the interest of brevity, Movants cite only to the provisions of the Exchange Act throughout this brief.

the most adequate plaintiffs. They filed the Complaint and have timely moved for appointment; they have the largest financial interest in the litigation, with combined losses of $2,046,015.97; and they satisfy the representative requirements set forth in Federal Rule of Civil Procedure 23 ("Rule 23"). *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa)-(cc).

For the reasons discussed below, Movants respectfully request the Court enter an order appointing them Lead Plaintiffs for the Class and approving their selection of Morris Kandinov as Lead Counsel for the Class.

## **FACTUAL BACKGROUND**

Movants filed this securities class action on July 29, 2026, against PTHL, three of its officers and directors, its auditor Marcum Asia CPAs LLP, and the two underwriters of its initial public offering ("IPO"), Cathay Securities, Inc. and Dominari Securities LLC. ¶¶ 1–2. PTHL is a Cayman Islands holding company that conducts its purported business operations through a Beijing subsidiary and markets treatment planning software used to plan radiation treatment for cancer patients. ¶¶ 2–3. The Company completed its IPO on September 5, 2024, selling 2,250,000 Class A ordinary shares at $4.00 per share for gross proceeds of $9,000,000. ¶ 5. The Class A ordinary shares traded on the NASDAQ Capital Market under the symbol "PTHL" throughout the Class Period, and now trade under the symbol "ITOC" following the Company's January 2026 name change. ¶ 16.

This case arises from the collapse of PTHL's stock price on July 29, 2025, following a fraudulent market manipulation scheme, which its low-float IPO was structured to facilitate. ¶¶ 4, 45. That "pump-and-dump" scheme drove the Company's share price from its $4.00 IPO price to an all-time intraday high of $32.00 on July 28, 2025. ¶¶ 6, 50. The price spike did not correlate with any material corporate developments or legitimate business prospects. ¶ 6. Rather, promoters posing as legitimate financial advisors touted PTHL in WhatsApp groups, online forums, and

social-media posts with baseless claims to create a buying frenzy among retail investors. ¶¶ 7, 51–58.

On July 29, 2025, hours after an independent investigative publication identified PTHL as the target of a pump-and-dump scheme, PTHL's share price collapsed approximately 95% in a single trading session, falling from the prior day's close of $30.96 to $1.65 per share through at least ten volatility halts, and wiping out more than $700 million in market capitalization. ¶¶ 60–61. Three days later, the Company issued a press release conceding that its share price had been "influenced" by "false rumors." ¶¶ 9, 62.

Throughout the Class Period, Defendants made materially false and misleading statements and failed to disclose material adverse facts about the Company's business, operations, and the true nature of the trading activity in its securities. ¶ 10. Defendants did not disclose that: (1) PTHL was the subject of a market manipulation and fraudulent promotion scheme involving social-media misinformation and impersonators posing as financial professionals; (2) the Company's IPO was intentionally structured with an extremely low public float to enable the manipulation scheme; (3) PTHL's public statements and risk disclosures omitted any mention of the intention to use fraudulent trading or the realized risk of market manipulation used to drive the Company's stock price; (4) the Company's securities were therefore at unique risk of extreme price volatility and trading halts; (5) the Auditor Defendant and the Underwriter Defendants had been involved with numerous foreign microcap public offerings that became targets of market manipulation schemes; and (6) as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and lacked a reasonable basis. ¶¶ 10, 45.

## ARGUMENT

## I. MOVANTS SHOULD BE APPOINTED LEAD PLAINTIFFS

Movants should be appointed Lead Plaintiffs because they have timely filed a motion for appointment as Lead Plaintiffs, have the largest financial interest in this litigation, and otherwise satisfy the requirements of Rule 23.

The PSLRA requires the plaintiff who files an action governed by its provisions to publish a notice (the "Notice") to the class within 20 days of filing the action, informing putative class members of: (1) the pendency of the action; and (2) their right to file a motion for appointment as lead plaintiff within 60 days after publication of the Notice. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i). Additionally, the PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to the Notice and to do so by the later of (1) 90 days after the date of publication, or (2) as soon as practicable after the Court decides any pending motion to consolidate. *See id.* § 78u-4(a)(3)(B).

Pursuant to the PSLRA, the Court "shall appoint" the "most adequate plaintiff" to serve as lead plaintiff. *Id.* § 78u-4(a)(3)(B)(i). The PSLRA provides a "[r]ebuttable presumption" that the "most adequate plaintiff" is the person or group that:

> (aa) has either filed the complaint or made a motion in response to a notice . . .;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

*Id.* § 78u-4(a)(3)(B)(iii)(I).

As set forth below, Movants satisfy all three criteria, are the most adequate representatives of the Class, and should be appointed Lead Plaintiffs.

### A. <u>Movants Filed a Timely Motion</u>

On July 31, 2026, two days after this Action was filed, the undersigned counsel caused the statutorily required Notice to be published via Newsfile Corp., a national wire service, pursuant to Section 21D(a)(3)(A)(i) of the Exchange Act, 15 U.S.C. § 78u-4(a)(3)(A)(i). The Notice announced the pendency of the Action, described the claims asserted, identified the Class Period, and advised investors in PTHL securities that they had until September 29, 2026, to file a motion to be appointed as lead plaintiff. *See* Declaration of Andrew W. Robertson ("Robertson Decl."), Ex. A.

Movants have filed this motion pursuant to the Notice, and each has attached a sworn PSLRA Certification attesting that he or she is willing to serve as a representative party on behalf of the Class. *See* Robertson Decl., Exs. B & C. Accordingly, Movants satisfy the first requirement to serve as Lead Plaintiffs for the Class.

### B. <u>Movants Have the Largest Financial Interest</u>

"Courts in this District generally look at the following factors to determine financial interest: '(1) the total number of shares purchased during the class period; (2) the net shares purchased during the class period . . .; (3) the net funds expended during the class period . . .; and (4) the approximate losses suffered.'" *Peters v. Jinkosolar Holding Co., Ltd.*, 2012 WL 946875, at *5 (S.D.N.Y. Mar. 19, 2012) (citing *Kaplan v. Gelfond*, 240 F.R.D. 88, 93 (S.D.N.Y. 2007)).

As evidenced by their PSLRA Certifications, Movants purchased PTHL Class A ordinary shares during the Class Period and suffered losses as a result of Defendants' misconduct. *See* Robertson Decl., Exs. B, C & D. During the Class Period, Movants: (1) purchased 84,777 PTHL shares in total; (2) purchased 52,845 net shares of PTHL; (3) expended $2,087,023.69 in net funds;

and (4) suffered approximate losses of $2,046,015.97. Robertson Decl., Ex. D. Movants' purchases and the losses they suffered, both individually and collectively, are summarized in the below chart.

| | Total Shares | Net Shares | Net Funds | Losses |
|---|---|---|---|---|
| **Moustacakis** | 50,997 | 19,065 | $1,087,135.69 | $1,072,341.25 |
| **Olendska-Moustacakis** | 33,780 | 33,780 | $999,888.00 | $973,674.72 |
| **Combined** | 84,777 | 52,845 | $2,087,023.69 | $2,046,015.97 |

To Movants' knowledge, their combined loss of $2,046,015.97 is the largest of any Class member seeking appointment as Lead Plaintiff. Movants therefore have the largest financial interest in the relief sought by the Class and are entitled to the PSLRA's presumption that they are the most adequate plaintiffs.

**C. <u>Movants Satisfy the Requirements of Rule 23</u>**

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(iii), the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." *Id.* § 78u-4(a)(3)(B)(iii)(I)(cc). Of the Rule 23 prerequisites, only two—typicality and adequacy—directly address the personal characteristics of the lead plaintiff movant. In deciding a motion to appoint Lead Plaintiffs, the Court therefore need only make findings as to the typicality and adequacy of the proposed Lead Plaintiffs, and at this stage those findings need only be "preliminary." *In re Tronox, Inc. Sec. Litig.*, 262 F.R.D. 338, 343 (S.D.N.Y. 2009). Movants make this preliminary showing.

"Typicality requires that the claims of the class representatives be typical of those of the class and is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Id.* (internal quotation marks omitted). The claims Movants assert are typical of the claims of the other members of the putative Class because, like all other Class members, they: (a) purchased PTHL securities

during the Class Period; (b) were adversely affected by Defendants' allegedly false and misleading statements and omissions; and (c) suffered damages as a result. Because Movants' claims rest on the same legal theories and arise from the same course of conduct that gives rise to the claims of other Class members, typicality is satisfied. *See Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 397 (S.D.N.Y. 2008); *Taft v. Ackermans*, 2003 WL 402789, at *3 (S.D.N.Y. Feb. 20, 2003).

A plaintiff is an adequate class representative when the plaintiff's interests are common with, and not antagonistic to, those of fellow class members, and the plaintiff's attorneys are qualified, experienced, and able to conduct the litigation vigorously. *See Tronox*, 262 F.R.D. at 343. Movants are adequate to serve as Class representatives because, like all other members of the Class, they suffered losses from purchasing PTHL securities at prices artificially inflated by Defendants' alleged misstatements. Movants will benefit from the same relief as every other Class member, and they have no interest antagonistic to the Class.

As husband and wife, Movants have interests aligned with each other and with the Class. Their relationship long predates this litigation, they invested in PTHL together, they are the named plaintiffs who initiated this Action, and they have prosecuted this Action jointly from the outset. Courts in this District regularly appoint married couples as lead plaintiffs under the PSLRA and aggregate their losses. *See Micholle v. Ophthotech Corp.*, 2018 WL 1307285, at *8 (S.D.N.Y. Mar. 13, 2018) (finding that spouses "will be able to act collectively" and aggregating their losses for purposes of the lead plaintiff analysis) (internal quotation marks and citation omitted); *see also Siegel v. Boston Beer Co.*, 2021 WL 5909133, at *6 (S.D.N.Y. Dec. 14, 2021).

Movants also have demonstrated their adequacy by retaining competent and experienced counsel. *See Pirelli*, 229 F.R.D. at 413 (considering qualifications of proposed lead counsel in

evaluating adequacy); *Constance Sczesny Tr. v. KPMG LLP*, 223 F.R.D. 319, 324 (S.D.N.Y. 2004) (same). As shown below, Morris Kandinov is highly qualified, experienced, and able to conduct this complex litigation in a professional manner. Movants accordingly have made a *prima facie* showing that they satisfy the requirements of Rule 23 for purposes of this motion.

## II. MOVANTS' SELECTION OF LEAD COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to the court's approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). In making this determination, a court should not disturb the lead plaintiff's choice of counsel unless it is necessary to "protect the interests of the class[.]" *Id.* § 78u-4(a)(3)(B)(iii)(II)(aa). "There is a strong presumption in favor of approving a properly-selected lead plaintiff's decision as to counsel." *Topping v. Deloitte Touche Tohmatsu CPA, Ltd.*, 95 F. Supp. 3d 607, 623 (S.D.N.Y. 2015).

Movants have selected Morris Kandinov to represent the Class. Morris Kandinov has a track record of successful service as class counsel in securities and investment-related litigation, placing it in the Top 25 of ISS SCAS's ranking of the Top Plaintiff Law Firms of 2024.[3] The firm currently serves as class counsel in other federal securities actions, including actions involving pump-and-dump schemes similar to the one at issue here.[4]

---

[3] Recoveries by Morris Kandinov as lead or co-lead class counsel include: *J.B. and Margaret Blaugrund Foundation v. Guggenheim Funds Investment Advisors LLC*, No. 2021-1094 (Del. Ch.) ($18.8 million); *Funicular Funds, LP v. Concord Acquisition Corp.*, No. 2022-1173 (Del. Ch.) ($13.1 million); *Funicular Funds, LP v. Pioneer Merger Corp.*, No. 22-10986-JSR (S.D.N.Y.) ($13 million); *In re FAST Acquisition Corp. Stockholders Litig.*, No. 2022-0702 (Del. Ch.) ($12.5 million); and *ATG Fund II LLC v. VPC Impact Acquisition Holdings Sponsor II, LLC*, No. 23-1978-JSR (S.D.N.Y.) ($7 million). *See also* https://moka.law/wp-content/uploads/ISS-Top-Securities-Firms-2024.pdf.

[4] *See, e.g.*, *Gordon v. Ostin Technology Group Co., Ltd.*, No. 26-cv-01288 (S.D.N.Y.); *Dixit v. Smart Digital Group Limited*, No. 26-cv-00296 (S.D.N.Y.); *Shah v. China Liberal Education Holdings Ltd.*, No. 26-cv-00823 (S.D.N.Y.); *Miley v. Hatteras Funds, LP*, No. 25-cv-672 (D. Del.).

The Court should approve Movants' selection of Morris Kandinov as Lead Counsel. By doing so, the Court can be assured that the putative Class will receive the highest caliber of representation. *See* Robertson Decl., Ex. E.

## CONCLUSION

For the foregoing reasons, Movants respectfully request that the Court: (1) appoint Jean-Claude Moustacakis and Izabela Olendska-Moustacakis as Lead Plaintiffs for the Class; and (2) approve their selection of Morris Kandinov as Lead Counsel for the Class.

Dated: September 29, 2026

*/s/ Andrew W. Robertson*

**MORRIS KANDINOV LLP**
Andrew W. Robertson (Lead Trial Counsel)
Aaron T. Morris
305 Broadway, 7th Floor
New York, NY 10007
Tel. (212) 431-7473
andrew@moka.law
aaron@moka.law

*Counsel for Lead Plaintiff Movants Jean-Claude Moustacakis and Izabela Olendska-Moustacakis and Proposed Lead Counsel for the Class*

## **CERTIFICATE OF COMPLIANCE**

The undersigned counsel certifies this Memorandum of Law complies with the word-count limitations permitted by Local Rule 7.1(c). The brief contains 2,510 words, excluding portions exempted by Local Rule 7.1(c), and uses a proportionally spaced, 12-point Times New Roman typeface in compliance with Local Rule 7.1(b)(1).

*/s/ Andrew W. Robertson*
Andrew W. Robertson

**CERTIFICATE OF SERVICE**

I hereby certify that on September 29, 2026, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

*/s/ Andrew W. Robertson*
Andrew W. Robertson